Case No. 15-1208, United States Department of the Air Force, Luke Air Force Base, Arizona, Petitioner v. Federal Labor Relations Authority. Mr. Panik for the Petitioner, Mr. Hennigy for the Respondent. It's for Doug. You can do the privacy one since you like that. That's fine. That's good. I'll do this one. Okay. Isn't that the one you want to do anyway? Yeah, no, that's fine. Yes. Okay. Yes. Go ahead. May I please have a question? Judge Ginsburg will be back any moment. Thank you, Your Honor. We will repeat everything for him. May I please declare it Mark Hennig for the U.S. Department of Justice. I represent the Air Force in this case. The case before you presents the question of whether or not the Secretary of Defense has the exclusive authority to operate the shopette at Luke Air Force Base. The case is actually broader than that. The question that's really before you is whether or not the Secretary of Defense has the exclusive authority to operate the commissaries and exchanges all over the country and the world. And the Secretary of Defense has that authority, not only by tradition, but also because Congress in 2004, the very first time, enacted legislation now embodied in Section 2481 and 2484 of Title X, that specifically defined the exchange system and the commissary system and very specifically gave the Secretary of Defense the exclusive right to operate the, quote, shopettes and the entire military resale system. That includes commissaries and exchanges. The stakes in this case are very, very large. This may just involve Luke, but let's make no mistake, this involves every single military base worldwide and the Secretary's authority to regulate them. Why is it that, I'm curious, there's a whole series of cases decided by the authority and by this court involving civilian access to commissaries, right? There is. So how come nobody's made this argument before? Those cases all predate this 2004 legislation that was enacted by Congress in public law. There's nothing after 2004? No, there is not, Your Honor. When was our decision in Griffiths? I'm sorry? When was our decision in Griffiths? That was before, that was 1988. All right, I see. And Your Honor's decision in 2761 was 1988. So you think under federal law? I'm sorry? You think under federal law the agency is foreclosed from allowing this to happen? No. If they choose to bargain it, they can, right? I think the Secretary of Defense has basically the unfettered discretion to decide how to operate those. To do it or not. To do it or not. And to distinguish between different bases, right? The statute doesn't say anything about that. What it does give the Secretary of Defense, the authority to operate any way he has, and we know he has exercised that authority because he has issued instructions, binding orders, on the chain of command, if you will, that directs when civilian, domestic civilian employees may have access to these exchange facilities. And he has stated in these instructions, orders, that they may not, in 50 states of the United States, they may, outside the continental United States. Are these the instructions that you're arguing about? Instructions that were not raised below? They were raised below, Your Honor. I can't find it. Well, if you look at the mediator's decision, you see a linked discussion of these very instructions. That's 1330.21. And the mediator's discussion of the particular subsection involved in this case, 6.5.3. They were raised with the authority? They were raised with the authority. The authority is self-discussed in its opinion. This is the opinion after the mediation? Yes. So they were raised in the mediation, and then you discussed them and put them before the authority when you came back from the mediation? Yes, because all the matters that were being raised. And the authority said it was too late, is that right? I'm sorry, Your Honor? And the authority said it was too late? The authority said, and I don't understand this, the authority said that we're asking for a deference to the instructions, but didn't cite the instructions. But what we asked for in our papers was a deference to the Secretary of Defense's interpretations of these statutory provisions. And the only interpretations, the only implementation of these statutory provisions, were the instructions, instructions 1330.21. That was raised before the mediator herself. It's discussed by the mediator's opinion at length. And it is the only thing that the authority had before them. And, indeed, they discussed these instructions expressly in their opinion in rejecting the arguments claiming deference to the Secretary of Defense's authority. Go ahead, David. You're relying on Section 2484, right? And 2481, yes. It's used in the phrase, exclusive right to operate shoppets, right? Correct, Your Honor. And that's in context. I'm sorry. No, go ahead. Remember, that phrase, that's in C-4 of 2484, was adopted by Congress on the same day it adopted the language, all the language that appears in 2481. And that language bears all to be read together because they were obviously adopted together. But 2481 informs the scope of that delegation as well because the very first time in the history of exchanges, Congress has now defined what the exchanges are and what the military resale system was. And it has defined them by giving the authority to the Secretary of Defense to operate it for a very specific class of beneficiaries, all of whom exclude domestic DOD employees. Are you suggesting that because this section that lists who the stores can sell to, it lists members of the Uniformed Services on active duty, members of the Uniformed Services entitled to retirement pay, dependents. So is it your theory that it doesn't list civilians, right? That's your point. It does not list any civilians. So is your point that the Secretary can't allow civilians? No. What Congress said to the Secretary is that you may operate these in terms of what's necessary to carry out the purposes. So now set forth for the very first time in Section 2481B, and that is for the benefit of these beneficiaries, these statutorily defined beneficiaries. No, my question is I understand your argument about exclusive authority. I got that language, right? Yes, sir. It says exclusive authority. And I assume by that you meant, well, they have exclusive authority, and it's totally up to him about who can use it, right? It is totally up to him. But now you're telling me that this section, which lists the four beneficiaries, is it limited to that? No, and I was about to answer that, Your Honor. Go ahead. The authority that he has is the authority to operate these facilities by reference to military readiness, military recruitment, and military retention. That's military affairs we're talking about. He may well have this discretion to, and he has exercised that discretion, to allow civilian access to exchanges in foreign bases because that promotes military readiness. If it promotes military readiness. Yes, Your Honor. And some domestic bases as well, like I think it's Ellison Air Force in Alaska. Okay. He has that discretion if it's for hardship. Actually, the secretary, each of the branch secretaries have the discretion for severe hardship and isolated, geographically isolated posts, and that's a non-delicable discretion that each branch has that has to be justified every single year and is strictly construed. We have the section 2012, there was a military regulation that came out. We cite it in our brief. It's attached to our brief as a statutory addendum. It is very strictly construed. Now, the authority simply ignored all that. They ignored the language associated with C2 and said it didn't apply. I just want to be totally sure. This is the very first case to arise after passage of that statute? That's correct. Okay. And that makes a difference. Can you spend a few moments on your not a condition of employment argument? As I understand it, you're essentially saying there's no connection between what's being requested and there's no relationship between work and what's being requested. Well, the test that this Court has articulated, and Your Honor did this as well in 2761, and this Court did it in Griffis, is that there has to be a direct link or explicit link is the terminology that the Court has used. And we think you don't need to get there at all, but even if you assume that there is an absolute authority that the Secretary of Defense has, you still have to address this particular point as to whether or not this particular proposal All right. So I understand all of that. That's why I wanted to get you. Okay. The point on that is we don't think it is. This is actually the threshold issue, correct? Well, it's not the threshold issue because the threshold issue is whether or not the authority of the Secretary of Defense is absolute, and thus you don't ever have to get to the conditions of employment question at all because it's contrary to law to force bargaining where the Secretary has complete discretion. That's in this Court's cases, and the authority acknowledges that. But if the Court were to say this did not have the requisite connection, it would not imply anything about the Secretary's authority. Yes. You could set it the other way around and not lose the question of the authority of the Secretary. I thought you argued it anyway because if we want to hesitate, we may, and so we'd like to hear your argument. I understand. I'll get to that. I thought you argued it. I'm sorry. No, you go ahead. I don't think there is the requisite explicit link. Certainly under the test that this Court adopted in 2761, there's no explicit link. There is no connection between any of the duties. All this access that they are seeking for is off-duty. That's not controlling, but it's certainly relevant. It has nothing to do with the— Well, there have been cases in which it has occurred. Not this sort of access. But that's exactly what I'm asking. What's different here? Now, the union offered some explanations why it would be important to the employees, and I thought your position was that that really wasn't in play. Their position is that they would like it as a matter of convenience. Right. And our position is that as a matter of mere convenience and off-duty of employees, it's not sufficient because there's no explicit link between the on-duty employment conditions of employees and what they're paid to do. You're saying the authority in this case, as opposed to Antilles and other cases, didn't make such a finding. The union has argued it. The union has argued that convenience is sufficient. But the authority did not make any connection. No, the authority said convenience is sufficient. We think that's wrong. Right. Well, no, it didn't. The way I read the authority's position is they simply cited previous cases. Well, none of those cases actually stand for the proposition that convenience is sufficient. Then what can be sufficient? I'm sorry, Your Honor. I'm sorry. The fact is, like, I have to work all the time. I'm on the base, or things like that. And I thought what was happening here was the union tried to raise those, and the authority was not resting on that. Right. And the authority simply seemed to take all of the prior cases and say because they involve civilian employees, these are civilian employees too, it's convenient, we'll do it. And I thought your argument was that had never been the precedent. Mere convenience is not the precedent. That's correct. That is our argument. And, in fact, the authority didn't make that argument. Because that's what we're trying to figure out, how you distinct. Because there clearly have been cases where this has been allowed. There have been cases involving circumstances such as this. And Your Honor's opinion in 2761 illustrates the point. That situation involved a cancellation of a picnic by the organization. And the picnic was conducted on agency time paid for by the agency and involved rewards given to employees. Those, in this case, doesn't have any of those. Those were the explicit links that this court in Griffiths said provided the explicit link. There's nothing like that here. If you compare this to the case called Vandenberg, which is an old authority decision, where they thought recreational use to on-base facilities and on-base recreation, then you can make up that that was not a condition of employment. That's what we have here. What's next? Access to the firing range, the obstacle course, the exercise facilities? You can justify anything in terms of convenience to employees, none of which have anything to do with the things for which they were hired. I return to the point. These facilities are maintained for purposes of military readiness, recruitment, and retention for the statutory beneficiaries. None of these individuals fall within that group. Thank you, Your Honor. Thank you. May it please the Court, my name is Zachary Hennigy. I'm here on behalf of the Federal Labor Relations Authority. With me, I have Stephanie Fowle and Solicitor Fred Jacob. We're also on the brief. This case involves two issues. Working conditions, the conditions of work. You should refer to the authority's decades-long practice of requiring bargaining over access to military exchanges. In this case, it's a subset of those exchanges, the shopette. It's a convenience store. The second issue involves the principle that there's a presumption of bargaining over such conditions. And there are limited circumstances to overcome that presumption. Under 7117A, to avoid the obligation, the agency needs to show that bargaining is contrary to federal law, not to its interpretations, not to some regulation, not to some instruction. Another option is if there's a government-wide regulation, that would be like an OPM regulation. In this case, we have a statute, so we're not dealing with a regulation. And Air Force points to the statute which says that, talks about the secretary, the secretary's, quote, exclusive right to operate shopettes. Correct. So why doesn't that just kind of, and combined with the fact that the rest of the statute says the purpose of these things is to support the military and military readiness. And therefore, it's up to the secretary to decide that. It's exclusive or, in the words of our courts, unfettered discretion. Therefore, it's not bargainable. That's our argument. I understand, Your Honor. Thank you for pointing to those provisions. Yeah. This court, different circuits have looked for a clear indication from Congress, and though it's not definitive, they often look for words like, notwithstanding any other provision of law. We've never heard any provision of law. Yeah. I mean, you know, but the problem with that for this case is in every one of those cases that I've found, every case that's cited, every case I've seen, it's a conflict between a statute that relates to employment in a federal agency and Title V. So it's natural that if a statute is establishing hiring priorities for a particular agency, you would look for something like notwithstanding anything in Title V. But this is the only case I've ever seen where the statute that the government relies on is not an employment statute. I mean, when Congress passed this in 2004 and made clear that this was the exclusive discretion of the Secretary and what the purpose is of these courts, they weren't thinking about Title V. Right? Why would they have thought about it? If we're talking about access. And besides, excuse me, do you know a case which says, I don't know of any case that says, notwithstanding any other law is required for us to find? None that's required. Okay. Right. Okay. But do you see my point about the difference between this case and all those other ones? I do. Yeah. But for the bargaining obligation to think that this will preclude bargaining, something that was established in 1978. Since 1978, we had a number of cases. We had Local 3295. That was in 1995, this Court saying notwithstanding. Oh, but we have a new statute. In 2004. We have to figure out what that new statute means. Sure. Congress could have passed a statute which changed the obligation to bargain by the way it spoke about the Secretary's, quote, exclusive right to operate. That's not the point. The history is irrelevant at this point. We have a statute. What does it mean? A new statute. Notwithstanding doesn't help you because Congress wasn't thinking about it. I wish they would have been thinking about it, the matter and how these laws play between other laws. But digging into that statute. You give too much. Okay. Digging into that statute. Nobody thinks Congress functions that way. I want to give them a little bit of credit. But looking at 2481 under Title 10, I won't disagree with you. 2481 very clearly says that the exchange and the commissary are separate systems. It's not just the heading. It's in the text of that provision. Yeah, but the section refers to shopettes. It says exclusive authority, exclusive right to operate shopettes. And you're right about the title, but the language of the section, we don't rely on titles anyway usually. Okay. The section says exclusive right to operate shopettes. The meat of Section 2481A in the section, in the text, says that these are separate systems. The meat in 2484 is talking completely about the commissary system. A, B, and C all refer to the commissary and specifically talking about goods to be bought, purchased, and resold. And what those goods are in 2484B is a laundry list, a shopping list of goods, like meat and potatoes and various other things. 2484B talks about if the military is going to go off of that shopping list, it's going to need to tell Congress and let them know what's going on. 24C says, notwithstanding B, despite that, if it's one of these smaller, and I would argue commissary stores, a commissary shopette, a commissary convenience store because everything in the section is about the commissary, you're not going to have to worry about going to Congress. And it doesn't mean that we're going to preclude any other statute that's out there from applying to this area of the law. Can I ask you about the other issue? Of course. I mean, unless my colleagues had a question about that. Did you? No. So you agree, because you stated quite nicely in your brief, you know, in Griffith and in the FLRA's own decisions, it's very clear that this question of whether something relates to employment is a fact question, right? Correct. Okay. So do you have local 1547? Do you have the two decisions there in front of you? I want to ask you a question about it. I do, Your Honor. Okay. So let's start with 1547-2, okay? Yes. I'm at Joint Appendix 70, okay? 70? Yeah. It cites 1547-1, and it cites longstanding precedent, but I don't see any fact finding in this at all about the conditions here. There's nothing in there, is there?  They aren't relying on precedent. Okay. Make no mistake about that. Right. In reference. That would be okay if 1547-1 did some fact finding, right? But I don't see it there either. It's just everything in this opinion is they talk, they say, the authority has consistently held that proposals relating to food services, no fact analysis. Then they reject each argument that the Air Force makes, but the only thing they cite is precedent. In other words, in fact, it's kind of interesting. Every paragraph is sort of the same. They say, okay, they argue that convenience, they argue convenience. The answer is the authority has rejected similar arguments in the past. They argue that they say this only involves employee personal choices. Quote, the authority has previously rejected a similar argument like six of those, right? That's right. So there's no fact finding in here. In 2010, that's exactly. They went through and refuted all of these arguments. Correct. So doesn't that just fail the Griffith standard that these are fact-based cases? In each case, there has to be specific fact finding about why access to the particular commissary or shopette is necessary. Is work-related. And that's what the prior cases say. The access has to be tied to work-related activities. And there are no findings here. There's nothing. There are no findings. By the time we get to the 2014 decision, Your Honor, we've gone through a hearing in front of an arbitrator, and facts were developed that the authority points to in its background describing the time that it takes to get on and off base, the fact that they only have 30 minutes for lunch, the ability to deal with the bottlenecks that resulted from the closure of the gates, relying on those type of facts, and looking back to its prior decision as precedent, the authority found that there was a time. Where in the decision does it rely on? In fact, I thought it told us they didn't rely on those facts. If you look at Joint Appendix 68, it talks about the shopette being part of the base exchange. It talks about the employees working various shifts during the weeks and on the weekends. Many have limited break periods. Often having to drive off the base during the breaks to satisfy their shopping needs. These facts help the authority determine that there is a link to the workplace conditions. There is something going on with their work situation. Well, this case just looks completely different than the prior cases where the authority is always relying on specific work-related requirements or activities to support a decision that they should have access to the shopette. And here it's just about you saying convenience, and the authority has never gone that far before. You're just talking about convenience. I don't think that it is just convenience, Your Honor. No, I don't know what else it is. I think the ability for the- Because they have access otherwise while they're at work. They don't have to leave at lunch. The authority- Right? The civilian employees have access while they're there, right? Well, they have access to the shopette. Yes, right. Absolutely, Your Honor. But they don't have access to walk around to the next aisle and pick up aspirins if they have a headache during the day. If they cut their hand during the day while they're at work, they could get a Band-Aid at that shopette. And if they need gas, they could get gas there, right? They could get gas there, Your Honor. So why is that more than a convenience? I mean, they could get gas off base. They could. This is more convenient, correct? There is a convenience factor for sure, but even this court in 2761 referenced access to the break room and taking away the conveniences in the break room was a problem and that that was a bargainable subject. No, a break room is pretty closely related to the work that precedes and follows the break, right? I mean, if this were an NLRA case, there would be no question that that would be a condition of employment. But we're not talking about that here. We're talking about off-duty access to the employer's stores. The proposal- And gas stations. And you can see the union's argument in front of the impasses panel. This is about the breaks. It's about their 30-minute lunch period. It's about their ability to- Well, that's because you suggested that that's their only time when they can get something, right? No, they have ancillary benefits derived from that as well. On their way into work, they could stop at the shopette. That's exactly right. It's just more convenient to do it on base. Were you- A few minutes ago you were talking about the mediator's statements about the benefit this would have for employees, right? Correct. Okay, but you say in your brief that- You say in your brief- I'm just looking for my notes here. You say these don't represent the findings. You say these don't represent the findings of the authority given that the mediator was tasked only with determining whether the proposal was in the public interest, not whether it involved conditions of employment. That's what you say at your brief. The point there, and I apologize if that was confusing- It wasn't. It seemed pretty clear to me. You're saying don't rely on this. Don't rely on- That point was don't rely on the reference to the instructions, I believe. Because the authority on page MJA- Don't rely on what? Appendix 69 lists what happened in front of the arbitrator and talks about working on base and the convenience and the gate closures due to September 11th, looks to those facts and making the link to- Where does it make- See, I still haven't found any place in the opinion where it does anything other. It recites- It recites them. What happened in the meeting, but when it gets around to its analysis, it just talks about prior cases. Right? It flows from the facts section, Your Honor. That's the best I can say to you. Okay. All right. I got your argument. Okay. You got anything else? No. Okay, thank you. No other questions? We ask questions dismissed. Thank you. Great. Counsel, any time left? Okay, you can take two minutes. Thank you, Your Honor. I'd like to leave the court with this one thought. There's 800 some odd civilian employees at Luke and 3,500 active duty military personnel. At Wright-Patterson, there are 6,100 civilian employees who are bargaining unit eligible. There's 5,300 servicemen. If this authority holding were to be sustained, it would mean that those 6,100 civilian employees who now have no access to the exchange facilities would now be competing with every single one of those 5,300 active duty service personnel. Those service personnel are the intended beneficiaries of the system, not the civilian personnel. And on a personal note, if I may, I'm retiring from the federal government at the end of this month after 34 years of service. It's been my great privilege and honor to appear before this court, and I thank you. Congratulations on your retirement. Thank you. We've appreciated your assistance over the years. Thank you. Thank you. Case is submitted.
judges: Tatel, Edwards, Ginsburg